(Reap. Dec. 8592)

JACOB SOHNEN & SONS FEATHER CO., INC. *v.* UNITED STATES

Entry No. 886222.

(Decided June 15, 1956)

*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

WILSON, Judge: This appeal for reappraisement involved the proper value of certain merchandise invoiced as "Formosan Grey Goose Feathers," imported from Hong Kong, China, in April 1951 and entered at the port of New York.

The merchandise was entered at United States $0.89 per pound, less certain nondutiable charges, plus an addition for freight. Subsequently, said entry was amended to HK $44 per picul for 76.28 piculs, or a total value of HK $3,356.32 (equal to United States $0.057 per pound). Appraisement of the merchandise was made at United States $0.89 per pound, plus 3.4676 per centum net, packed, less ocean freight and consular fee.

It appears that the merchandise under consideration was purchased by the plaintiff under written contract, according to specifications. A copy of the contract covering the purchase of the imported merchandise (plaintiff's collective exhibit 1, R. 6) discloses that the feathers ordered were to be of "F. A. Q." quality ("fair, average quality") of the following specifications:

| | |
|---|---|
| Dust | maximum 30% |
| Feathers | minimum 70% including |
| | Chicken — maximum 5% |
| | Quills — maximum 2% |
| | Duck — maximum 20% |
| | and Down — not less than 15% |

Plaintiff contends that the merchandise here imported was not the commercial grade of feathers ordered according to the above specifications, but that the importation was typical of the waste products of the feather industry sold as "fertilizer," and that the price at which such merchandise was freely offered for sale in Hong Kong was 6 cents per pound, which plaintiff herein claims as the proper value for the imported merchandise.

Mr. Ernest Sohnen, president of the importing company, who had spent some 20 years in the feather business, testified that the merchandise under consideration was purchased by him under written contract, according to specifications, as set forth in plaintiff's collective exhibit 1, *supra* (R. 4–5).

Plaintiff's witness, in explaining the distinction between down and feathers, stated that down is the undercoat lying closest to the breast of the water fowl and does not contain a center quill shaft; that a feather originates from a point, an axis shaft, "defined as a quill shaft" (R. 6); and that the down is of greater value because of its small supply.

The witness further testified that he personally examined the merchandise on its arrival and that all he was able to observe in the bales examined were quills 8 to 9 inches long; that the said merchandise "resembled in every respect what is typically regarded as fertilizer both in the United States and in the country of origin" (R. 8). Subsequently, plaintiff engaged the services of laboratory technicians to make an analysis of the merchandise, and, as a result of such analysis and reports made therefrom, and from his own inspection, plaintiff's witness determined that the merchandise imported was "fertilizer."

The imported material, according to Mr. Sohnen's testimony, could not be sold as a commercial grade of feathers (R. 9). He also testified that, on or about May 1951, the type of merchandise imported was offered for sale in the market of Hong Kong; that, at such time, he was informed as to the quotations for that type of merchandise; and that the price at which such merchandise was then offered for sale was 6 cents per pound (R. 10).

On cross-examination, Mr. Sohnen admitted that he had never bought or sold merchandise which he described as fertilizer, but said he had seen such merchandise before in his plant and in plants he had visited in the feather industry. He described the imported merchandise as consisting of "dirt, earth, sediment, webs from ducks' feet, the dried skin," containing large quills about 8 to 10 inches, with no down visible to the naked eye, and having about 2 per centum usable feathers.

On the question of value, the witness stated that, in 1951, he received quotations from brokers representing shippers, not of fertilizer, but as to the value of quills, without impurities, and that at that time the value was "in the neighborhood of six to eight cents to ten cents," that is, for usable quill feathers, which were "the lowest grade of feathers." On this phase of the case, Mr. Sohnen further stated that "Various suppliers would offer their quills through their brokers here in New York to the various local manufacturers" (R. 21). He admitted that he never imported quills and was not in the market in 1951 for the purchase and sale of quills, as such, and could not recall specifically from whom he received such quotations, again stating merely that the price for quills at the time of exportation of the merchandise here in question was in the "range" from 8 to 10 cents (R. 22).

Mr. Sohnen further testified that, about April 2, 1951, he had received quotations for down, indicating that, depending on the

grades, down ranged in price from $2.50 to $3.50 per pound at that time. He testified that the market value in Hong Kong about April or May 1951 of the down and fiber in the merchandise covered by an analysis of 180 bales of feathers (plaintiff's collective exhibit 3), part of which merchandise consisted of 50 bales here under consideration, was $2.50 to $3.50 per pound; that the value of the feathers therein was 35 cents per pound; and that the value of the quills in said merchandise was about 6 cents per pound, the dust and sediment having no value (R. 23–24).

An affidavit of one Harry B. Niles, dated December 4, 1952, was received in evidence as plaintiff's collective exhibit 2 (R. 15). The affiant recites, *inter alia:*

I have been engaged for over 15 years in the buying, selling and processing in China of duck feathers, goose feathers and chicken feathers.

* * * I am thoroughly acquainted with all trade customs in the markets of Hong Kong relating to the purchase, processing, and sale of feathers.

    *        *        *        *        *        *        *

Feathers that are purchased in the rural areas adjacent to Hong Kong and then processed in Hong Kong are generally sold under contract specifications that provide for a maximum tolerance of dirt ranging from 5% to 15%, a maximum tolerance of quills and a required minimum of a certain percentage of Down. The most expensive and most desirable item is the Down.

The affiant stated further that feathers, which are customarily sold as fertilizer, would, on analysis, show approximately the following ingredients:

| | |
|---|---|
| Dust and sediment | 53% |
| Quills | 33% |
| Feathers | 13% |
| Down and Fibre | 1% |
| | 100% |

and that the feather and down content of such a mixture could not be economically recovered, and, therefore, the practice both in Hong Kong and in Formosa is to sell such merchandise as fertilizer.

The affiant further stated that, at the request of the importer, he made an examination of certain samples of merchandise, including the imported merchandise; that he also studied reports of the Superintendence Co., to whom samples had been submitted, which company had sent samples of certain goose feathers, including samples of the imported merchandise, to a laboratory for analysis. Mr. Niles stated that, based upon his examination of the samples and a study of the reports received from the aforesaid company (plaintiff's collective exhibit 3), dated June 5, 1951, the merchandise he examined. including that representing the merchandise here in question, was not, in his judgment, any grade of feathers or down which is offered for sale in the markets of Hong Kong, either as Chinese feathers or Formosan feath-

ers, but that the merchandise was of a type that corresponds to the waste materials taken from the process of cleaning feathers in Formosa, and that it is a grade of material ordinarily offered for sale to farmers in the markets of Hong Kong and Formosa as fertilizer. The affiant then stated that such merchandise is sold as fertilizer and used as fertilizer in Hong Kong and Formosa.

Mr. Niles, in his affidavit, further recited:

I am acquainted with the market value of such merchandise in Hong Kong. On or about April 4, 1951 and April 10, 1951 the dates of shipment of the feathers covered by the above entries, the price at which such merchandise was freely offered for sale in Hong Kong, the principal market, in the usual wholesale quantity of 133 pounds (1 picul) was $44 (Hong Kong dollars). Figuring the value of the Hong Kong dollar as approximately 18¢, or $5.50, Hong Kong dollar to one American dollar, the value of such merchandise in United States money was 6¢ per pound. This merchandise was generally not offered for sale for export.

Plaintiff's proof in the case at bar as to the value of the imported merchandise consists, as heretofore indicated, of the oral testimony of the purchaser of the merchandise, together with that contained in the Niles affidavit. Through neither medium has the plaintiff, in my opinion, established the value of the merchandise in question.

The oral testimony of plaintiff's witness is confined to mere statements as to the value of the imported merchandise, unsupported by the proof required under the statute. Plaintiff's witness, who had never bought or sold fertilizer, asserted the merchandise was of the type of material sold as "fertilizer" and that its value was "about" 6 cents per pound. Such testimony, without proof of sales or offers for sale at the claimed price, made within the statutory requirements, does not constitute substantial evidence of value, and the statements made by plaintiff's witness in this regard are merely unsupported statements of essential, ultimate facts. Accordingly, they are insufficient to establish the value of the importation at bar. *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495.

Plaintiff's witness testified at length as to certain quotations given him, on or about the date of exportation of the involved merchandise, not for fertilizer, but for quills, which, in his opinion, were the lowest grade of feathers. However, the quills therein referred to are not those contained in the importation at bar, and the value of the quills in the instant shipment cannot be established by a comparison of the imported quills with other merchandise claimed to be of like character, especially since there is lacking in this record proof of those elements requisite in the establishment of value under the statute, since it is incumbent upon the appealing party to meet every material issue in the case.

In this connection, plaintiff stated that "these" quills, evidently referring to the importation here in question, have a value of "about" 6 cents per pound. This is mere opinion evidence and, without proof

on plaintiff's part of such evidentiary facts as would support such a conclusion, is insufficient to prove the value claimed.

Likewise, the statements contained in the affidavit of Mr. Niles, relative to the value of the imported merchandise, are nothing more than affiant's own conclusions of ultimate, issuable facts. The statements contained therein as to the price at which the involved merchandise was freely offered for sale in Hong Kong on or about the date of exportation and that such merchandise was not generally offered for sale for export do not establish the market value or price at the time of exportation "at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade," either for home consumption or for exportation to the United States (section 402 (c) and section 402 (d) of the Tariff Act of 1930, as amended). *Kobe Import Co.* v. *United States* 42 C. C. P. A. (Customs) 194, C. A. D. 593.

The burden imposed upon a party attacking an appraised value is twofold, i. e., to prove the action of the appraiser is erroneous and to establish some other value as the proper one. Even if the plaintiff herein has sustained its burden of establishing that the appraised value was erroneous, it still had the burden of proving a different correct value in its place. *Kobe Import Co.* case, *supra.* See also *G. & H. Transport Co., Inc. (Philipp Wirth)* v. *United States*, 27 C. C. P. A. (Customs) 159, C. A. D. 78, and *Devonshire Mills Co.* v. *United States*, 15 Cust. Ct. 408, Reap. Dec. 6203. While the record in the case at bar indicates that the imported merchandise was not up to the standard of the specifications under which it was ordered, pursuant to contract, the plaintiff herein has failed to establish what the value of this particular grade of feathers is.

On the basis of the record here presented, I find that the plaintiff has failed to meet the burden of proof imposed upon it under the statute and that the presumptively correct value, as found by the appraiser, has not been overcome. Accordingly, I find the appraised value to be the proper value of the involved merchandise.

Judgment will be entered accordingly.